JAMES TRIMBLE & Co. *v.* HURST, MILLER & Co.

*Execution liens—Application of proceeds of Sheriff's sale.*

The proceeds of a private sale of a portion of his personal property by the defendant in executions, under an agreement with his execution creditors that the proceeds be applied to the executions according to priority, must be applied by the first lien creditor to his execution debt and not to an unsued note; and a creditor, whose claim was not in execution at the time of the private sale, but being in execution at the time of the Sheriff's sale, might insist upon this application and thereby become entitled to the proceeds of the Sheriff's sale of the balance f defendant's goods.

*(Kent, May 8, 1884.)*

PETITION for application of proceeds of sheriff's sale.

The contention in this case arose under the following circumstances:

The personal property of Nehemiah Jacobs was sold by the Sheriff of Kent County on the twenty-fourth day of March, 1884. After paying undisputed claims, there remained in the Sheriff's hands $338.90. Of this sum Wm. H. Vaughn claimed $152.03; Hurst Miller & Co., $181.08, with interest from January 17, 1884, and costs; and James Trimble & Co., $198.00, with interest from February 15, 1884, and costs.

Under the provisions of the 3d Section of Chapter 32 of the Revised Statutes, page 164, the Sheriff asked and obtained leave to pay the money into Court. As soon as this was done, James Trimble & Co. presented their petition to take it out; upon which a rule was laid upon Hurst, Miller & Co. to show cause why the prayer of the petition should not be granted.

The evidence was substantially as follows:

On the twenty-fourth day of March, 1884, when the Sheriff's sale took place, he had in hand these executions against Jacobs:

Thomas C. Else & Co., received February 8, 1884.

| | | | |
|---|---|---|---|
| E. Levering & Co., | " | " | 9, " |
| C. H. Dillinger & Co., | " | " | 9, " |
| W. H. Vaughn, | " | " | 12, " |
| James Trimble & Co., | " | " | 16, " |

But *prior* to all of these, to wit, on the seventeenth of January, 1884, Hurst, Miller & Co. placed two executions in the hands of a constable against the said Jacobs; and it was conceded that if

the plaintiffs in these had done nothing to waive or forfeit their lien they would be entitled to take the money out of court, and that the rule should be discharged.    To prove that they had done this, the Petitioner called the defendant, Nehemiah Jacobs, as a witness, who said in substance, that being anxious to sell a part of his property at private sale, to take place February 14, 1884, he obtained the consent of all the creditors who had executions at that time that he might do so, provided he would apply the proceeds to the executions in the order of their priority; that Squire Golt, who was the agent of Hurst, Miller & Co., had assented to this with the others; that Golt attended with the constable the day of his vendue and made no objection; that the proceeds of the private sale amounted to nearly $200 which was nearly the same amount as the two executions of Hurst, Miller & Co.; that the same was made on time, and judgment notes were taken from the purchasers and transferred to Squire Golt, as the agent of Hurst, Miller & Co.    That he meant and understood that these vendue notes were on account of the executions then in the constable's hands against him.    That he really did not then know or remember that 'Squire Golt had other notes of his due Hurst, Miller & Co.    Also that he paid 'Squire Golt the costs in cash.

Nathaniel H. Griffith, the constable, was called by the plaintiffs in the Rule, and proved that he received the executions of Hurst, Miller & Co. from 'Squire Golt; that he made a levy; that when he saw Jacob's advertisements up, he called on Golt to know what he should do.    That Golt told him to meet him at Jacob's the day of the sale; that he did so; that Golt told him not to interfere, as he had *other claims* a good deal larger in amount than the executions, and wanted Jacobs to sell enough to pay all the claims in his hands; and that he, Jacobs, had promised to do so.    That in consequence of this instruction he did not interfere with the sale. He also said that 'Squire Golt afterwards instructed him to claim the amount of these executions out of the fund in the sheriff's hands, which he had done, but was refused.    He said further that Golt had paid him his costs on the executions.

John S. Herrington, sheriff, proved the agreement of the execution creditors to let Jacobs sell at private sale, provided the proceeds were applied to the executions in order of priority.

The defendant in the rule, Hurst, Miller & Co., called E. J. Golt, Esquire, who said he was a Justice of the Peace and Notary Public, and a Collecting Agent. That he had four notes given by Jacobs to Hurst, Miller & Co. That he obtained judgment on two of them, and issued executions to Griffith. That Jacobs informed him that he was going to make a vendue, and wanted his consent, so that there would be no interference; that he assented so far to his going on, that he said he, Golt, would go down to the sale; that he did so, and did not object to the sale, but refrained from doing so, because he expected all the claims in his hands to be paid out of the proceeds; that he meant the unsued notes; that he regarded these only as in his hands, and the executions as in the hands of the constable; that after the sale Jacobs brought him the notes and he applied them to the unsued notes, and did this with Jacobs' assent. He also exhibited a paper showing the application, but admitted on cross examination that this paper was written after Jacobs left. He also said he had given Jacobs a receipt, stating that the notes were to be applied to claims in his hands. The receipt was afterwards produced and was as follows:

Received March 7, 1884, of Nehemiah Jacobs, one judgment note of Peter and D. T. Loose for $49.26, one note of Samuel Porter's for $80.00, one note of Eugene Coppage and W. B. Hazell for $28.48, and one note of Herbert Hennford's for $37.00, which when paid, is to be applied to claims of Hurst, Miller & Co., in my hands for collection.

$  49.26                                     E. J. GOLT.
    80.00
    28.48
    37.00
   _____

$194.74

*J. Alexander Fulton*, for the Petitioners, contended :

1. That there was actual payment of the two executions of Hurst, Miller & Co. by the acceptance of the vendue notes.

2. That the conduct of Golt as the agent of Hurst, Miller & Co. was fraudulent in fact and in law, and by it they lost the undoubted priority.

*Kimball v. Mungee*, 2 Hill, 364; *Kellogg v. Griffin*, 17 John., 274; *Storm v. Wood*, 11 John, 110; *Freeburger's Appeal*, 40 Pa., 244; *Commonwealth v. Stembach*, 3 Rawle, 341; *Eberle v. Mayer*, 1 Rawle, 366.

3. That if there was any doubt in the evidence as to the application of the vendue notes, it should be resolved in favor of Trimble & Co., *First*, because Jacobs swears positively that he intended the notes to go to the executions, and he had an undoubted right at that time to direct and control the application.    *Second*, because the statement of the application in the receipt given by Golt is equivocal in its terms.    That *claims* may as well embrace executions as unsued notes; and, at any rate, where an instrument is capable of two constructions, the one favorable to the maker, and the other to the recipient, the one most favorable to the latter shall prevail.

*N. B. Smithers*, for Hurst, Miller & Co., contended:

On the question of fact, the evidence showed that the application was not to the executions in the hands of the constable, but to the unsued notes in the hands of 'Squire Golt.    That Golt swore positively that such was the fact, and the receipt bore him out; because by its terms it was on account of *claims* in his hands for collection, while the executions were not in *his* hands, but in those of the constable.

That the transactions between Golt and the constable and Jacobs were neither legal nor actual fraud, and did not postpone the executions.    That *at that time* Trimble & Co. had no executions against Jacobs, and he had a perfect right to dispose of his property as he pleased, so far as they were concerned.    That a plaintiff in an execution may give any indulgence he please without losing his lien or priorty.

*Janvier v. Sutton*, 3 Har., 37.

*Fulton*, in reply, said that the word "claims" embraced both the executions and the notes unsued, and was as applicable to the one as to the other.    That the contention that the vendue notes were to be applied to the executions was the more reasonable from

2

all the circumstances; and especially so as Jacobs had no occasion to ask leave to make a vendue as to claims not then sued.

That while it was true Trimble & Co. had no lien at the time of the private sale, yet the fund in court did not arise from the proceeds of that sale, but of the subsequent sale by the Sheriff when they had their executions in his hands; and that the court was sitting here as a Court of Equity, and if Hurst, Miller & Co. had done anything that prejudiced Trimble & Co.'s rights they ought to be and would be postponed.

He did not question the authority of *Janvier vs. Sutton,* but contended that that was a very different case on the facts. That there was simply *indulgence;* in this case there was positive aid by which the property passed out of defendants' hands, thus leaving him so much less able to pay his debts.

THE COURT held that the executions of Hurst, Miller & Co. were not entitled to the balance of the fund in question.